UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jason Guido | : | |
| 2515 S. Darien Street | : | |
| Philadelphia, PA  19148 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. |
| | : | |
| FCI Lender Services, Inc. | : | |
| 8180 E Kaiser Blvd. | : | |
| Anaheim, CA  92808 | : | |
| | : | |
| Defendant | : | |

## COMPLAINT

### Preliminary Statement

1.      This is an action for damages and other relief brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices.

2.      This action concerns what has come to be known as a "zombie second mortgage," that is, a second mortgage loan that has been long forgotten by its maker, who for whatever reason has allowed the loan to go into default and has ceased all collection activity, but who later has sold the loan to a debt buyer who resumes collection, often with aggressive tactics including the threat of foreclosure.

**Jurisdiction and Venue**

3. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337. Venue in this District is proper in that the Defendants transact business here and the conduct complained of occurred here.

**Parties**

4. Plaintiff Jason Guido ("Plaintiff" or "Mr. Guido") is a natural person residing at 2515 S. Darien Street, Philadelphia, PA 19148 ("the property").

5. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. §1692a(3).

6. Defendant FCI Lender Services, Inc. ("FCI" or "the servicer") is a mortgage servicing company doing business in Pennsylvania and elsewhere, with a principal place of business located at 8180 E Kaiser Blvd., Anaheim, CA 92808.

7. At all relevant times, FCI has purported to hold servicing rights to the mortgage on Mr. Guido's home.

8. To the extent that FCI holds servicing rights to the mortgage on Mr. Guido's home, it obtained the rights after the mortgage debt was in default.

9. The principal purpose of FCI is the collection of debts using the mails and telephone, and FCI regularly attempts to collect debts alleged to be due to another.

10. FCI is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

11. FCI is a "servicer" subject to the loan servicing requirements of federal regulations at 12 C.F.R. § 1026.41.

**Factual Allegations**

12. Mr. Guido owns his home at 2515 S. Darien Street, Philadelphia, PA 19148 ("the property") together with his wife Nicole S. Guido.

13. Mr. Guido and his wife purchased the property in 2003 with a purchase money mortgage loan from Master Financial.

14. On or about June 12, 2007, Mr. Guido and his wife refinanced their purchase money mortgage with a new mortgage loan in the amount of $152,000.00 from CitiMortgage, Inc. ("the first mortgage"). According to the chain of assignments recorded with the City of Philadelphia Department of Records, the current holder of the first mortgage is New Residential Mortgage, LLC.

15. As part of the same transaction as the first mortgage and on the same date, Mr. Guido took out a second mortgage loan from PNC Bank ("the loan"). The PNC loan was secured by a mortgage to PNC Bank National Association in the maximum amount of $19,000.00 ("the second mortgage"). A copy of the second mortgage, redacted to delete confidential information, is attached as Exhibit "A".

16. The second mortgage loan is what is commonly known as a "15-30 balloon loan," that is, a loan where monthly payments are calculated based on a 30-year amortization schedule but where the loan matures and the full balance of the loan comes due in full after only 15 years, thereby requiring a final balloon payment upon maturity of an amount almost equal to the original principal balance. In this case, if all monthly payments had been made in full and on time, a balloon payment of $15,972.02 was to have come due on June 12, 2022.

17. The balloon feature was never explained to Mr. Guido. At the loan closing, which took place in his kitchen, the loan officer rushed him through the signing of a plethora of documents and never gave him the opportunity to read or understand them.

18. The second mortgage has been assigned pursuant to a chain of written assignments recorded with the City of Philadelphia Department of Records as follows: first, from PNC Bank National Association to US Mortgage Resolution LLC, dated October 30, 2018; second, from US Mortgage Resolution LLC to Aspen Properties Group, LLC as Trustee of AG3 Revocable Trust, dated February 25, 2019; and most recently, from Aspen Properties Group, LLC as Trustee of AG3 Revocable Trust to an entity denominated as "Wilmington Savings Fund Society, not in its Individual Capacity but Solely as Owner Trustee of the Aspen GS Trust, a Delaware Statutory Trust" ("Aspen Trust"), dated April 15, 2021.

19. Defendant FCI's actions, as described herein, were undertaken as servicing agent for Aspen Trust or the predecessor holders of the mortgage.

20. Originally, PNC Bank supplied a coupon book to Mr. Guido for him to use in making payments on the second mortgage. The coupon book covered a specified period following the inception of the loan and contained individual coupons for each payment due, showing the amount of the payment, the due date, and where to send payments.

21. Initially, Mr. Guido made extra payments in an attempt to pay off the loan sooner, returning multiple coupons with his payments to correspond with the additional amounts paid.

22. Then, in or about 2009, Mr. Guido encountered financial difficulties and was unable to continue his payments. He believed, however, that due to the extra payments he had made, he had significantly reduced the loan balance and only a small amount remained due on the loan.

23. On a date that Mr. Guido does not recall with specificity but expects to learn in discovery, but prior to June 1, 2018, the coupon book ran out. Neither PNC Bank nor any successor supplied a replacement book, nor did PNC Bank or any successor send periodic mortgage statements showing the amount that needed to be paid, the due date, or where to send payments.

24. In or about 2013, Mr. Guido received a letter from PNC Bank stating that the loan had been charged off.

25. At the same time, Mr. Guido's credit report stated that the loan had been charged off.

26. Mr. Guido believed as a result that he no longer had to make payments on the loan.

27. In 2019, after many years in which no efforts were made to collect on the loan, FCI began aggressive collection activities against Mr. Guido.

28. On a date in 2019 that Mr. Guido does not recall with specificity but expects to learn in discovery, FCI began sending periodic mortgage statements.

29. FCI has sent periodic mortgage statements each month since then.

30. Each of those mortgage statements included a demand for interest on the loan from November 28, 2013 through the month of the statement.

31. In addition, on information and belief, until June 2022, when the loan matured, each of those mortgage statements also included a demand for late fees assessed each month from November 28, 2013 through the month of the statement.

32. Moreover, these statements were explicit in that their purpose was to attempt to collect a debt. They state twice, on pages 2 and 3: **"IF YOU ARE NOT IN BANKRUPTCY**

**OR DISCHARGED OF THIS DEBT, BE ADVISED THAT FCI IS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE."**

33. By sending these statements, FCI, the mortgage servicer, was attempting to collect a debt on behalf of the mortgage holder.

34. FCI sent such a statement each month in the year preceding the filing of this action.

35. A copy of the most recent statement from FCI, dated December 15, 2022, redacted to delete confidential information, is attached hereto as Exhibit "B".

36. The prior statements sent by FCI were substantially similar.

37. Mr. Guido received these statements, either at his own address or at his counsel's address.

38. In sending each of the monthly statements, FCI intended Mr. Guido to believe, and "the least sophisticated consumer" would in fact believe from reading the statements, that the amounts set forth therein as due were actually due from the borrower.

39. On or about September 5, 2019, FCI caused a mortgage foreclosure complaint to be filed and served on Mr. Guido and his wife ("the foreclosure complaint"). The action was brought in the Philadelphia Court of Common Pleas under the caption *Aspen Properties Group, LLC as Trustee of AG3 Revocable Trust v. Guido et al*, September Term 2019, No. 00532. A copy of the foreclosure complaint, omitting the cover sheets and exhibits thereto, is attached hereto as Exhibit "C".

40. Although the nominal plaintiff in the foreclosure case was the then-holder of the mortgage, it was FCI, the mortgage servicer, who directly or indirectly made the decision to file

the foreclosure complaint, it was FCI who directly or indirectly provided its attorneys with the information contained in the allegations of the foreclosure complaint, and it was an FCI employee or agent who verified the foreclosure complaint. The foregoing is averred on information and belief.

41. The foreclosure complaint averred that Mr. Guido had defaulted on the mortgage loan.

42. The foreclosure complaint alleged at paragraph 10 as follows:

> As of August 29, 2019, there is due and owing amounts secured by the Mortgage in the sum of $23,350.57, which amount is due includes [sic] the following:
>
> Principal Balance ...................................................................$14,930.27
> Interest through August 29, 2019 at the
> current rate of 10.7500%
> (currently a per diem of $4.46) ............................................ $9,233.23
> Late Fees ............................................................................ $1,186.57
> Total due .............................................................................$23,350.07

43. The interest claimed in the foreclosure complaint includes interest accrued during the charge-off period.

44. The foreclosure matter remains pending in the Court of Common Pleas. It was stayed for a period of time due to the Covid-19 pandemic and is currently scheduled for a conference in the court's Mortgage Foreclosure Diversion Program.

45. In causing the foreclosure complaint to be filed and served, Defendant intended Mr. Guido to believe, and "the least sophisticated consumer" would in fact believe from reading the foreclosure complaint, that the amounts set forth therein as due were actually due from the borrower.

46. Defendant's acts as described above were done intentionally with the purpose of forcing Mr. Guido to pay the amounts claimed in the foreclosure complaint and in the monthly mortgage statements, or if that effort failed, to recoup those amounts from Mr. Guido's equity in his home upon or after sheriff's sale.

47. FCI is not lawfully entitled to charge interest or demand payment for interest for the period in which it or any prior loan servicer failed to provide a coupon book or send a periodic statement.

48. Pursuant to federal regulations found at 12 C.F.R. § 1026.41(a), a mortgage servicer is required to send a borrower periodic statements:

> A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement . . . . If a mortgage loan has a billing cycle shorter than a period of 31 days (for example, a bi-weekly billing cycle), a periodic statement covering an entire month may be used. For the purposes of this section, servicer includes the creditor, assignee, or servicer, as applicable. A creditor or assignee that does not currently own the mortgage loan or the mortgage servicing rights is not subject to the requirement in this section to provide a periodic statement.

49. In the alternative, a servicer may provide a coupon book that satisfies certain requirements. 12 C.F.R. § 1026.41(e)(3).

50. The regulations provide an exception to the requirement to send periodic statements or provide a coupon book where a loan has been charged off. 12 C.F.R. § 1026.41 (e)(6)(i).

51. According to a typical definition, "a charge-off is a debt, for example on a credit card, that is deemed unlikely to be collected by the creditor because the borrower has become substantially delinquent after a period of time. However, a charge-off does not mean a write-off of the debt entirely." *Charge-Off: Definition, Effect on Credit Score, and How to Remove*, INVESTOPEDIA,

https://www.investopedia.com/terms/c/chargeoff.asp#:~:text=A%20charge%2Doff%20refers%20to,to%20repay%20the%20debt%20anymore (last visited January 9, 2023).

52. During a period in which a loan has been charged off, a servicer may not charge any additional interest or fees on the account. 12 C.F.R. § 1026.41(e)(6)(i).

53. After a loan has been charged off, a servicer may cease to treat it as charged off but may not retroactively assess fees or interest on the account for the period of time during which the account was charged off. 12 C.F.R. § 1026.41(e)(6)(ii)(B).

54. The above-cited regulations became effective on June 1, 2018.

55. PNC charged off the loan when it ceased sending coupon books or period statements to Mr. Guido.

56. PNC acknowledged as much when it sent the letter to Mr. Guido stating that the loan had been charged off.

57. FCI ceased treating the loan as charged off when it resumed sending periodic statements in or about 2019.

58. FCI was not entitled to assess interest or fees during or for the period when the loan was charged off, from June 1, 2018 (the effective date of the relevant regulations) until the date that FCI resumed sending monthly statements.

59. Nevertheless, as stated above, FCI *did* assess interest and fees during that period.

60. FCI's allegations, contained in the foreclosure complaint and in each monthly mortgage statement, that interest and fees were due during and for that period, were false and deceptive.

61. FCI's allegations, contained in the foreclosure complaint and in each monthly mortgage statement, as to the total amount that was due were false and deceptive.

62. Mr. Guido was forced to defend the foreclosure action, which was predicated, in part, on the unlawfully charged interest.

63. Mr. Guido was thereby deprived of his substantive right to truthful information.

64. Moreover, the inaccurate statements frustrated Mr. Guido's ability to make a well-reasoned decision as to how best to address the alleged debt and the foreclosure action predicated on the debt, whether by dealing with FCI directly, retaining a lawyer, filing for bankruptcy, disputing the facts alleged in the foreclosure action, or attempting to modify his loan to pay it off.

## **Claim: Violation of FDCPA**

65. All previous averments are incorporated herein by reference.

66. Defendant's actions violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in ways including, but not limited to the following:

    a. Defendant violated 15 U.S.C. § 1692e by using false representations and deceptive means to collect a debt.

    b. Defendant violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character of the alleged debt.

    c. Defendant violated 15 U.S.C. § 1692f(1) by demanding fees or charges not expressly authorized by the agreement creating the debt or permitted by law.

67. As a result of the acts of Defendant alleged above, Plaintiff's equity in his home is reduced by the amount of the improper charges, and he faces the loss of his home to foreclosure. In addition, Plaintiff has not only been misled about the nature and amount of his debt, but has suffered aggravation, humiliation, embarrassment, anxiety, sleeplessness, loss of appetite, and feelings of worthlessness and helplessness.

68.     As a result of Defendant's violations of the FDCPA, Defendant is liable to Plaintiff for declaratory relief and for actual damages, statutory damages, and attorney's fees and costs.

## Relief Requested

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendant for the following:

    a.    Declaratory judgment that Defendant's conduct violated the FDCPA;

    b.    Actual damages;

    c.    Statutory damages pursuant to 15 U.S.C. § 1692k;

    d.    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

    e.    Such other and further relief as may be just and proper.

Dated: January 19, 2023

/s/ Peter D. Schneider
PETER D. SCHNEIDER
Attorney for Plaintiff
Pa. Id. No. 40351
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut Street
Philadelphia, PA 19102
215-981-3718
pschneider@clsphila.org

Dated: January 19, 2023

/s/ Ian Charlton
IAN CHARLTON
Attorney for Plaintiff
Pa. Id. No. 324750
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut Street
Philadelphia, PA 19102
267-443-2680
icharlton@clsphila.org